All right, the court is prepared to hear argument in the case of United States v. Hashimi, and we will hear once again from Professor Rosenberg. Thank you, Your Honor. May it please the court, I'd like to introduce Zachariah Spurrier. He is a qualified third year student at the West Virginia University College of Law, and he will be presenting argument for Mr. Hashimi. You may proceed. Good morning, Your Honors, and may it please the court. We'd like to reserve five minutes for rebuttal. Today, Mr. Hashimi comes to this court because seven years ago, during closing arguments, his trial counsel conceded two of the four counts against him. Those concessions were against Mr. Hashimi's wishes. Today, this court should reverse the district court's denial of Mr. Hashimi's 2255 motion and remand for a new trial for two reasons. First, Mr. Hashimi lost the autonomy over his defense under McCoy v. Louisiana. And second, the counts against Mr. Hashimi were so intertwined that the concession of two effectively concedes the rest. This case has quite a history with us, doesn't it? Yes, it does, Your Honor. Tell us about the history of it and how we got to where we are. So I'll pick a moment in the procedural history. Mr. Hashimi filed an ineffective assistance of counsel claim before the McCoy decision came down. It was denied by the district court, denied again by this court. He did not get an en banc hearing, and then he wrote a pro se writ of certiorari to the Supreme Court, which was accepted, granted, and then sent back to the Fourth Circuit and then back to the district court to consider McCoy v. Louisiana. Then Mr. Hashimi took that to the district court, was denied relief there, took it to the Fourth Circuit, and then this court said that if new evidence came that would put the conclusion of that opinion that McCoy didn't apply at the time in question, then Mr. Hashimi could bring that in a 2255 motion. Well, in there, when we did look at it, that particular panel looked at it and said there's no definitive evidence regarding whether Mr. Hashimi consented or objected to his counsel's concession guilt. So what is it different now from the case that was brought to us previously in the panel of this court that ruled but gave that opportunity that now moves us in the direction of saying McCoy would require that a new trial should be held? So two pieces of evidence, Your Honor, in the record. The first, at Joint Appendix 839, a note passed between Mr. Hashimi and his counsel. So the trial had just begun. The state was doing a direct examination of one of their star witnesses, Ms. Dante, and Mr. Hashimi was writing notes to his counsel saying, I don't know who this witness is talking about. You have to get up and cross her on certain things, say this, say that. And his counsel just wrote back, responded, one of the reasons I recommended the plea to you of a count. You now have unlimited exposure. And so on day one of the trial, it shows that Mr. Hashimi's counsel was pushing for one thing. Definitively, he was recommending pleas. And the record shows that over the course of this before trial, five different plea offers or negotiations, some kind of deals that Mr. Hashimi could have taken but he didn't. And it shows that Mr. Hashimi's counsel wanted one thing even at the start of trial and Mr. Hashimi wanted something else. Well, we have to somewhat differentiate those actions that would amount to a McCoy-type analysis necessary and a Strickland analysis. And when you get into the business of strategy of counsel, he says, well, you're exposing yourself to a much larger sentence here and pushing in that direction. And here it is. Isn't that more of a strategic decision than it is an autonomous decision? No, Your Honor. So with that note, the rejection of plea offers in the record, the difficult relationship Mr. Hashimi had with his counsel, just like in McCoy, and the affidavit, which was that second piece of new evidence brought to this court for this proceeding, and that's at Joint Appendix 780, where Mr. Hashimi says at no point did he ever say that he at no point did he give his attorney permission to concede during closing arguments. Can I tell you what my biggest concern about this affidavit is? It strikes me that the defendant in Florida v. Nixon could have written Paragraph 5 of this affidavit and truthfully swore into it. Because Nixon could have said at no point during or after the trial did I give my attorney permission to concede during closing arguments my guilt. And the one thing we know for sure is that that guy lost. That's right, Your Honor. And that's the only thing Nixon did. And that's what makes Mr. Hashimi. No, but it seems to me that that paragraph alone gets you absolutely nowhere because Nixon could have written that exact paragraph. Because at no point did he give his lawyer permission to do it either. Right. The problem with Nixon is that there was no complaint of anything. There was no evidence in the record that counsel was trying to go one direction and the defendant wanted to go the other way. The problem is the evidence for that is bad for you, too, because you point out the rejected plea offers, but then there's the fact that literally at the end of the trial, defense counsel tried to plead guilty to these very counts. And this affidavit does not say when my lawyer did that, he went rogue. Right. I read this affidavit over and over again, and there is nothing in this affidavit that says when my lawyer tried to plead guilty to these very counts at the close of the evidence, he was going rogue and acting contrary to my directions. Right. Well, that's right, Your Honor. That's not in the affidavit. But the district court also didn't ask Mr. Hashimi if that's what he wanted to do. This was a 2255 proceeding. Your client was putting in an affidavit. He easily could have said my lawyer was completely out to lunch when he did that. I never told him he could do that. And he doesn't say that. No, Your Honor, but he does say paragraph 5 in the affidavit, and he does provide the note to this court as new evidence that he had one objective for this case, and that was to pursue acquittal and go through a trial and put the government to its burden. And his counsel throughout each steps of it seemed to be on a different page. Just like the defendant in McCoy, Mr. Hashimi asked for new counsel at the arraignment hearing at a status conference that's joined Appendix 32 and 78, asking for new counsel, saying that Mr. Hashimi didn't feel like he had met with his counsel enough that each time they had left on heated terms. And then the five different plea offers, one pre-indictment, one post-indictment. Can I also ask you something else about this affidavit that sort of strikes me as a loud silence? At no point does this affidavit say my lawyer never discussed with me whether he was going to concede guilt. There is no allegation in this affidavit that the lawyer didn't discuss this with me first. That's right, Your Honor. And that be a loud signal as well? No, Your Honor, because what's clear from the record is that Mr. Hashimi was pursuing acquittal this whole time. And there is evidence that Mr. Hashimi had tried to talk to his counsel, but they met for a little amount of time. The easiest thing in the world to write in this affidavit, at no point did my lawyer tell me. Like, literally this case was remanded for a hearing on this exact question. And I guess, I mean, when you read McCoy and Nixon, one thing that's really obvious is that in both of those cases, the court makes a big point of saying the lawyer talked to the client beforehand. And in Nixon, the client says nothing, and in McCoy, the client's like, no, don't do that, don't do that. I mean, I don't know how a person could possibly read Nixon and McCoy and not conclude, it would be really significant if I could allege the first time I ever thought my lawyer might do this is when I heard him say it during his closing argument, right? It would be obvious that if you could say that colorably, you should say that in this affidavit. And this affidavit does not say that. Right. The affidavit doesn't say that. But the rest of the record does show that they were on different pages. And that makes it different from the defendant in Nixon, where the first time that the defendant said anything about counsel being on a different page, pursuing a different strategy in that case, because that's a strategy case, was on appeal. Let me ask you that. So let's assume for the sake of argument we had a case where that was true. Posit that this is a case, contram Nixon, contram McCoy. The lawyer literally never talks to his client beforehand. And then he gets up in his closing argument and he concedes the client's guilt. Do you think that's a structural error claim, or would that be a Strickland claim? My lawyer never talked to me. Look, he might win or lose. Well, I guess if it's a structural error, he's automatically going to win. But if it's a Strickland claim, he might win, he might lose. But conceptually, do you think that's a McCoy issue or a Strickland issue? Well, I think you have to look at the record and see. No, I'm asking you, that's the record. The record is the defendant testifies and the jury and the fact finder believes him. I literally had no idea my lawyer was going to do that until he conceded my guilt. Again, I agree for purposes of Strickland, you'd have to look at the record and figuring out prejudice. But I don't think you need any more facts to answer the question. Do you think that's a structural error, or do you think that's a Strickland issue? Yes, Your Honor, that's a structural error that would be under McCoy. That would be the counsel usurping the objective of the defendant and doing whatever the counsel wanted, which is exactly the kind of Sixth Amendment violation that McCoy considered at the time. Right before this argument, I reread Nixon and I reread McCoy with that question in mind. Like, how would I deal with the you literally never mentioned it to me question? And I think the honest answer is to preview, because I'm guessing the government the same thing. I actually don't think McCoy and Nixon answered that question. I don't think they tell me what happens in that situation. So how should I decide what happens in that situation? Well, I think in that situation and in this situation, you do have to look at the record as what we've laid out here with the disagreement between counsel and— Because— This strikes me as like, what is my theory for why McCoy is a structural error and why Strickland is— I don't actually think I need to know anything about the record. I think I need to know, like, what is my theory of structural error? Well, then the theory is there are a few decisions that the Supreme Court in Jones v. Barnes and in McCoy reaffirmed that exclusively are for the criminal defendant, and one of them is to plead guilty, others to forego an appeal, to waive a jury trial, testify on one's own behalf. Those are explicitly and exclusively for the defendant. And so that would make it structural in that it would violate the Sixth Amendment, taint the entire trial, and it would become just counsel running the show. Fair enough, but okay, so what's your response to the best counter to that, which strikes me as, sure, the decision whether to plead guilty belongs to the client, and if the lawyer literally stands up without authorization and says, my client pleads guilty, that's a structural error. Totally agree. But if the allegation is you insufficiently advised me about the considerations involved in pleading guilty, we know that's a strickland issue, not a structural error, right? Right, Your Honor. So how does that cut? Like, what do we... So you know what I'm saying? Like, there's a way to argue that this is a failure to adequately advise issue, right? Like failure... So I guess another way to think about it is, do you agree with me that if the lawyer said, I'm going to plead guilty because I think it's the best way to get a shorter sentence, and the defendant says yes, and I agree your client doesn't say he did that, but the defendant says yes, and then afterwards the defendant says, well, yeah, but you didn't tell me that when I pleaded guilty I'd lose the right to vote and lose the right to own a firearm and lose the right to do this, and oh, by the way, you also didn't tell me that under the sentencing guidelines, even getting acquitted on count two doesn't really help, because under relevant conduct I'm going to have the same guidelines range on count one alone, and so I never would have told you that you can concede guilt on count one if I realized my sentence might be the same regardless of whether I'm acquitted on count two or not. All of those would be strickland issues, right? Yeah, strategy, but also I think those invoke some duty to advise and to counsel for adequate counsel so that... The adequacy of counsel is always a strickland issue. Right. So the argument would be that the failure to counsel at all is a structural issue? Can you repeat that? So you agree that if the lawyer says, I'm thinking of conceding guilt, here's why, and the client says, okay, and the client later says, you didn't adequately explain to me all the ramifications of conceding guilt, that is clearly strickland. But so your argument is that if you literally didn't talk to me at all, that that would be structural? Yeah, that would be failing the client completely in the Sixth Amendment, which guarantees the right to the assistance of counsel for his defense, the criminal defendant's defense, that would violate, that would be completely structural. I want to make sure now I'm understanding the import of this dialogue. So if your claim was that, yes, he asked the defendant, is it okay if I concede guilt, but failed to tell him why that might be a bad idea, that would be strickland. But if he just didn't ask at all and out of nowhere got up and conceded guilt to the jury, that's McCoy. Yes. Okay. And I take it you were making the second claim, that he did not ask at all, not that he did ask but didn't give a lot of advice as to why it might be a bad idea. Under McCoy, we're arguing that Mr. Ishimi made the objective of his defense clear that he was pursuing acquittal throughout with the evidence in the record and the new evidence brought to this court, and that his counsel did the opposite by, in closing statements, saying he would accept responsibility if he could, shame on him, he would get up here now and say, I'm sorry. I see my time is running out, so quickly, under Nixon, if this court does choose to apply Nixon, of course, that would be a strickland analysis looking at if Mr. Ishimi's counsel failed to meet the standard of objective reasonableness for an attorney. And here, if this court calls it a strategy of conceding these guilts in an attempt to get some sentencing reduction, that was pretty much a futile effort because Mr. Ishimi's counsel had already taken the government to trial to prove its burden at trial, and the sentencing guidelines and the comments do not suggest that is inappropriate. The acceptance of responsibility reduction is not appropriate for a defendant who takes the government to trial. And then lastly, Mr. Ishimi's counsel's concession on counts three and four effectively conceded counts one and two, because as the government's theory was, all the counts were connected by Mr. Ishimi's control over Ms. Dante, and that's how he conducted the conspiracy. I see my time is up. Thank you. Thank you very much. We will hear from the government's counsel, Mr. Lito. Good morning, and may it please the court. I want to begin by picking up on the affidavit. This was a heavily lawyered, well-crafted affidavit. So when your Honor says that there are... Can I ask, what does heavily lawyered mean? I mean, it's enough that it was lawyered, right? I don't know, like how do we know how much lawyering went into it? The point I'm trying to get at is when you look at paragraph five, there are these loud silences about what it's not saying. It doesn't say that Mr. Ishimi objected. It doesn't say that Mr. Ishimi was never consulted. At this stage, he was represented by counsel. They aggressively pursued the case. They thought... So what story is consistent with five? He was consulted, and he neither objected nor consented? Is that what you think paragraph five is getting at? Yes, something perhaps along the following lines. So he starts trial. He thinks nobody is going to believe Ms. Dante. I'm going to walk out the back of the courtroom a free man. The evidence comes in. Ms. Dante is quite compelling. We would have to essentially take a blind eye as to what went on in this trial. From the beginning, it's pretty evident Mr. Ishimi had a serious problem with his counsel. He moved to try to get rid of him, then tried again, tried again. He was at odds with him. The counsel went out of his way trying to get him to plead. He just wouldn't do it five times. He just said, no, I'm not going to do it. He's in the middle of a conversation with the key witnesses there, and the defendants maintain he's innocent. He says, she's just lying. And what we then get is this affidavit, and there is this language that says, at no point in advance of trial, and only minimally during trial, did my attorney discuss a theory of my defense. What's evident from this record is that this lawyer made a determination pretty early on, this defendant ought to plead guilty. This defendant made a determination early on he was not going to plead guilty, that he was going to maintain either his innocence or he wasn't going to consent. Now, affidavit, no affidavit. At some point in time, this is not McCoy, and this is that question that Judge Hyten is saying is not answered is, don't you think a lawyer ought to at least affirmatively indicate that I told him that I was going to do this? I mean, the thought of a defendant who's done everything in his world to get rid of a lawyer and tell him that I'm not going to plead guilty, or a lawyer for the first time in closing argument to stand up and argue that he's guilty, and the defendant is sitting there. Now, different than Nixon, it is very clear from the record that lawyer told him. I mean, he told him over and over, which if you're sitting there as a defendant, the lawyer tells you to do it, you say, no, don't do it. When a lawyer argues, it's natural that defendant says, oh, no, no, he's going to object all over the place. But you're sitting there as a defendant in a case, and your lawyer who represents you, where you plead not guilty, and you've tried everything to get rid of this lawyer, and it looks like to me, and I'm not saying the lawyer is not seasoned, I'm saying he's great, and I'm not saying he wasn't right, but it looks like to me he did not want to try this case. He did not want to take what that jury was going to take back. The defendant did, and the lawyer represents the defendant, not himself. So it's closer than it looks on his face from my perspective. It's a closer call because McCoy didn't say you had to get his dissent or represent it, but it didn't go the other way either. And when Justice Ginsburg wrote that opinion, I think that's a different factual. This one is kind of in between. It's putting this court in a position to answer a question we have not answered before, so if we can start with the proposition there's nothing in the record to show that he ever told this defendant, with all of the evidence saying the defendant didn't want to do it, nothing shows he ever told his defendant, I'm going to stand in front of that jury and tell them you're guilty. Well, it's the defendant's burden to make that showing, and again, I think we come back to the loud side. I don't know how much of a burden you need. All throughout the trial he has maintained in telling you he is not guilty. He is not. I don't want you to. He's telling his lawyer over and over. At some point in time, I know the defendant is not against his lawyer. This business of object, it just doesn't sound right that you ought to object against someone who's representing you in a proceeding. The autonomous aspect of it, the structural part, is where we're focusing on. I don't think we get the sprinkler. I don't know if I would maybe have different views. We could spend some time with that academic. I think it's an academic discussion. Maybe I can't. My colleagues feel differently. But I think with McCoy, as well, that this is autonomous. And it really turns on, as you say, the defendant has the burden. Does he have to stand up and say, well, he never consented? Or if the whole case indicates it, and this lawyer gets up and does it. And by the way, the lawyer, I'm not sure he ever represented himself in Strickland. And who else did he tell him? Or did he? I'm sorry. Did the defense lawyer ever say, I told him I was going to do this? No. That's not part of the record. Of course, their communication would be privileged. Seems like it's a pretty simple question. Somebody ought to ask somebody. Did you tell that defendant you were going to stand up in front of that? I mean, we can deal with the law in nice little procedural ways. But seems like it's a pretty simple thing. Somebody ought to ask, did you tell him you were going to stand up in front of that jury and tell him you're guilty? Well, again, I think that he had the opportunity to do that before the district court. But the district court didn't hold a hearing. I thought that was sort of the question in this case. Given the evidence we do have in the record of this kind of dispute between the client and the lawyer, and then the affidavit, which I agree does not clearly say, oh, and he also didn't consult with me on this. Although it does say he didn't consult with me enough. It just seems to me maybe there ought to be a hearing so someone can ask the defense lawyer what happened. And if he says, oh, sure, I consulted, then case over. But maybe he didn't. The defendant never asked for a hearing before the district court. I think that's important to note at the outset. And again, I think we come back to the issue. The problem is the defendant is not a lawyer. He's got a lawyer. The lawyer didn't ask for the hearing. The same lawyer he says he has a problem with. If the lawyer is not going to do what he wants to do, he's probably better off just representing himself on it if that's what he wants. I don't know ultimately whether he's got anything worse if he represented himself on this case. I mean, that's another question. But in the McCoy, it's the question of, and I don't want to push this too far because being a defense counsel and a prosecutor is tough enough litigating cases and trying to keep up. But a bright, loud rule, at least in trying to for lawyers to understand, you don't stand up in front of a jury unless you either ask the court somewhere or inform the court in advance, maybe the president or defendant. Judge, my client here, I've consulted with him. This is out of the jury. I'm going to stand in front of that jury and say he's guilty. In other words, I'm going to help the prosecution prove the case. The same case you say, those two charges are so intertwined with the other two, you won't give him a plea. You won't let him plead just to that because they're so intertwined. I don't know what that meant. I don't have to know what it meant. And I don't necessarily go to the extent it's being alluded to, but that's the representation. Well, Your Honor, there are different lawyers at different stages. So just to be completely clear, there was trial counsel, Mr. Johnson. There was appellate counsel, and then there was an additional attorney, additional firm represented Mr. Hashimi at the 2255 stage. This was not a case where the attorneys who were consulting with him in preparation of the affidavit were the attorneys who tried the case. It was a different firm. It was a different set of attorneys. No, I'm only talking about the trial. I mean, I understand what goes on in the appeal and whether or not you bring out evidence and other stuff on the appeal. I'm just asking what happened at the trial in terms of what the record shows and whether there's anything that indicates this lawyer said anything to that defendant. It's just over and over again. I'm not sure I've seen a case where a defendant seems to be so antagonistic against his lawyer. He really did not like this lawyer. He tried his best to not have this lawyer represented. It was very clear to him this lawyer was not going to, and probably rightfully so. I mean, the evidence probably was that overwhelming. And who wants to stand up and argue something that it just doesn't make any sense at all, what you're saying? I'm sure he had to because there's always, everybody turns on that reasonable doubt. It says, you know, you don't have to have absolute proof on it. But he didn't go there. He stood up and conceded guilt on two charges. And they were serious stuff, kidnapping on two charges. And I guess in anticipation, maybe you get a little sympathy on the other ones. So I think that there are two portions of the record to focus on. So the first part is, you know, the precise tick-tock of what happened from when the evidence went in prior to closing argument. But Mr. Johnson stood up and said to the trial judge, my client wants to plead guilty to counts three and four. So certainly at that point, it was something that had obviously been discussed. Again, there's no indication that at that point trial counsel had gone rogue. It would have been one of the most bizarre things I could imagine for a defense attorney. A pretty egregious Sixth Amendment violation to offer to plead guilty when you haven't discussed it with your client. And it wouldn't have been accepted. I mean, it has to be a knowing involuntary plea. The law is very clear. The defendant himself has to enter the plea. The defense attorney cannot do that for him. Just what I think will probably end up being a very peripheral question, but I'm just curious. So the counsel says he wants to plead guilty, and the government objects, and then he's not allowed to plead guilty. I was just sort of confused by that. Does the government, the government doesn't usually have to approve a guilty plea. And I know the government said, like, well, the counts are intertwined, but all the evidence was already in front of the jury. I'm just not clear. Why wasn't he allowed to plead guilty if he wanted to plead guilty? To be honest, I don't have insight into that. Okay, but it's kind of weird, right? It is strange. Okay. You know, I think that there's... For that matter, like, on what legal basis does the government get to object when the defendant tries to plead guilty? That's so odd. I'm not sure. I don't know that there is one. It's a very quick exchange. You know, when you read it, I'm not sure what type of conversation occurred between the government and the defense attorney at that point. But it's not the government's position that the government gets to say whether a defendant pleads guilty or not. No, I don't... I certainly think that there's an alternate world where he's allowed to plead guilty, and obviously this issue had gone away. I don't know what the basis for the objection was. I wondered about that. Well, a tenable basis would be if the defendant, if the lawyer represents, wants to plead guilty and the court believes that defendant providently does not want to plead guilty. So he does not. He says, no, I'm going to deny that because he's seen evidence all through it. No, we're going to go through the trial for this. We're not going to let you at this time plead guilty. And unless he's going to hold a hearing, which would have been prudent to do because it leaves us with speculation like you say, you've never seen anything like this. It doesn't make any sense to me. You're going through a trial. As a prosecutor, most folks, he wants to plead guilty. Yes, Your Honor, we'll take it because that saves us. Once we get that guilty plea on that, you can say, go through the providence and plead guilty on it. Now we'll proceed to the jury on the other two and tell them he's already guilty of this. That looks like to me an easy job. The prosecuting attorney didn't say that she was uncomfortable with him pleading guilty because he didn't want to plead guilty. And again, there would have been additional safeguards to that. What she says is, I don't think that's an option for him. I don't know what the basis of that was. But it's somewhat important because she said because they are intertwined, which would seem to indicate if you plead guilty to three and four, you pretty much pled guilty to one and two. No, I don't think you have to go that far. Or you provided a substantial basis for finding guilt on one and two. It's so intertwined that you can't just plead two of them. You need to do all four of them. I thought that's what the prosecutor said. You can plead guilty to all four or none, but you're not allowed to. We object to having you plead guilty to two. That was her point. And again, I don't know what the precise basis for that was. The way it was settled by the trial court is he said, if what you're interested in is acceptance of responsibility, I can note that. I don't think there's prejudice to having you plead guilty and not be found guilty by the jury if that's what they're going to do. And so they moved on. And it wasn't like a very involved kind of exegesis on the question. It was just a very quick, practical-based decision. I don't know it's one that you would typically see. I don't think it was really presented as an issue in this case, and I don't really know that there's much to be gleaned from all of that happening other than if you've been allowed to plead guilty to counts three and four, this wouldn't be a case here today. Does a defendant have a right to plead guilty? I would imagine so, yes. I mean, when you're going through the preliminary part of the trial, when you're going through arraignment, I mean, you could make a choice then. Would you think the prosecutor can get up and say, no, we don't want a guilty plea. We want to have a trial on this and go through it. I mean, so at what stage does the defendant lose that right? Well, I'm not sure that he does. I mean, I would think you have an absolute right to plead not guilty. I would assume that that means you have the absolute right to plead guilty if that's what you want to do as to the entire indictment. Can I ask you the same question I asked the other side? So I suspect you may not agree with this, but I'm going to ask you to posit that you do. I do not think that McCoy or Nixon answers the question of what happens in a situation where there's literally no consultation. Because I guess what I'll say is if I want to write an opinion that says it goes one way, I can read Nixon and McCoy to write an opinion one way, and if I want to write an opinion that goes the other way on that question, I can easily write an opinion that goes the other way. So would you like to try to convince me why the answer should be that it's a strickland issue, not a McCoy issue? That should be a strickland issue if he was never involved. If the situation where the lawyer just lit—the one I gave with the other side, like he literally—like the first time I ever heard my client was—my lawyer was going to do that is when he conceded my guilt during my closing argument. Why should I think of that as a strickland issue, not a structural error issue? Yeah, I think that it might well be a structural error issue, to be honest with you. There's a case that McCoy relies on called Gonzales that says there are certain rights where we require consultation and consent, and that seems to fit the structural error analysis that Justice Ginsburg uses in McCoy. I think the important thing about this case is, again, this was an affidavit that if he could have said something more aggressive, he would have said something more aggressive. Judge Hyden's question is critical on that point. I'm wondering, why can't it be mixed? That it can be a strategy of the counsel to get a stand and at the same time potentially offend the autonomous requirements under McCoy. It seems like to me it could be both. You can make a strategic decision. You can justify it. You can say it is absolutely—probably this counsel can't. I can tell you why this is done. This is done. It's not a prejudicial thing. It was done there. But the autonomousness of it goes back to McCoy. So it seems to me it could actually be a mixed type question that it could go either way. I think it could be difficult to say you have the right to object, and then someone can thwart that right by never raising the issue with you. But I think that the important— Let's make sure we're talking about the right to object. The business of a defendant objecting to his counsel, I'm not sure where we are on that. I'm not sure a defendant should be put in a position. He's sitting there. He's not a lawyer. Lawyers are arguing for him to object to the person that's representing him, but that's not the issue. The issue is did that lawyer inform him or get his consent to do it before he did it? No worries. Just on a cold case, you're a lawyer for a defendant. Defendant's sitting there. You stand up in front of a jury. First time that a defendant ever hears the word I'm guilty of this is you talking to the jury. And the defendant's sitting there saying what to himself? Does he have to say what out loud? Or does he have to just, as with anything, just be shocked and not do anything? That's the issue. Whether these facts show that or not is a question, as you said. I'm not sure the affidavit shows it, but as Judge Heitner is alluding to, that's a question that doesn't look like McCoy nor Strickland. They've not answered that question. Well, I think it is implicit in McCoy. I think the point is if you have a record where there's no indication that the person objected, it would be difficult to turn around and say, well, the reason he didn't object is because nobody told him this was going to happen. So, okay, you lose because you never objected, but you were never told in the first place. I think the important thing, though, to draw out about what's happened here is the defendant himself has never pushed this argument. He doesn't push it today. He didn't push it before the district court. His affidavit doesn't say I was never consulted. It says that I never gave permission. And at the beginning of my case, a member of the panel asked, well, what do you think happened here? I think this is a speculation. It is completely consistent with Nixon and with Paragraph 5. So the case begins. Mr. Hashimi believes that he is going to be acquitted because nobody could possibly believe Ms. Dante. He realizes as the evidence comes in that he is badly miscalculated. She turns out to be credible. That part is not evident. He realizes when the evidence comes in. It doesn't look like me. That's not indicated at all. I think you might be right that the evidence comes in. It doesn't look like he's believing that, though. He still thinks this woman is lying, that he's entitled. He wants an innocent plea. Well, he's pursuing that at the start of the evidence where she just begins to testify. And, again, the point is not that this is definitely what happened. The point is that this is a story that is consistent with Paragraph 5 and also consistent with Nixon, which is that the trial goes badly. He realizes he's going to lose. He wants to plead guilty. That is denied. And at that point, you get a defendant who decides, I'm just going to disengage. And I'm the one who asked the question, and I am asking you to speculate a little bit, and I understand that. But so the theory is the effort to plead guilty is disapproved, which, again, strikes me as sort of odd. And then the lawyer says, okay. Then there must have been some kind of a sidebar consultation where the lawyer says to the client, all right, that didn't work, so now I'm going to concede your guilt to the jury. And he, the client, does not object but also does not consent. That's what would make Paragraph 5 work? Your Honor, may I answer the question? I see I'm out of time. Of course. Yes, exactly right, Your Honor. It's a situation where having believed that the trial was going to go in his favor, realizing the evidence heavily tilts the other way, trying to get acceptance, having that rejected, so his last throw of the dice has been dismissed, and now he just kind of is overloaded or disengaged. And I think this is important because one of the things the defendant wants to say is my case is not Nixon because Nixon was nonresponsive throughout the whole process. I think there's kind of a lurking competency issue there. I'm in a different category. But no, toward the end of the trial, there were reasons to think he would have wanted to just say, okay, like, I want this to be over. Okay, so I do hear what you're saying, and that is perhaps a plausible story of what happened here. But I guess I'm still struck by the fact that the district court thought that the record was conclusive on this, like it is conclusively the case that that's what happened. And I just have trouble with that. I mean, the threshold for a hearing is not that high. It's just if the record does not conclusively establish that he's entitled to no relief, then you're supposed to have a hearing. The district court's judgment is not based on that type of factual finding. It's based on just a reading of paragraph five and saying this doesn't get the defendant where he needs to go. And he's evaluating a motion that doesn't ask for a hearing. And the argument that we're positing is an argument that he wasn't pushing at that point and hasn't pushed even on appeal. And so it's just something that was kind of outside the scope of what the defendant was saying was a problem to begin with. Let me ask you one last little procedural thing.  It's like we're going back and forth about what the record shows, what it doesn't show. There's an answer out there. And the question is, at this stage in the proceeding, could we send it back for a limited hearing for determination of whether this counsel actually informed the defendant before he stood up and argued to that jury? Or maybe it goes to the question of consent, at least informed, or no. Is that something you think that could be done? Well, I think it would be a remand on a question again, on an argument again, that the defendant has just never pursued at any stage. I think that is a meaningful choice given the way that this happened. But it's a factual thing that we'd like the trial judges to just tell us because it informs the law. And whether we're going one way or the other, we can say we've still got a way on it, but it would clarify a fact here. It seems the defendant seems pretty adamant it didn't tell me. But the answer is out there. And we're talking about not the trial. We're talking about a lawyer. The lawyer can tell us, did he inform this client before you stood up and argued this? Did he consent, and how did it happen? Maybe there's an answer out there. There is an answer. Let's put it that way. The question is, when we make a decision here and we're going based upon this record, it's nice to have the actual facts. It doesn't seem to be a harm to just get them. Because this is pretty egregious in some respects that you would want to have that kind of information. It could be a limited hearing. The defendant also knows the answer to that question. He submitted an affidavit in this case, and he didn't say any of the things that we're talking about. That's a meaningful choice. I probably didn't know that was going to be an issue we'd focus on. If you know that's an issue you focus on, you probably would when you're doing an affidavit on it. But it seems as though it's not a question of did you say enough. No one else is saying it. And sometimes in the absence of evidence, you say, well, no one has said anything different than this defendant. You didn't come back and say, even when he said, he didn't tell me. No one came back and said, oh, yes, he did. So if you don't say it, you figure, well, it must have happened. Your Honor, this was, as I said, a very lawyered, well-thought-out affidavit. He doesn't say the things that he needs to say. And all of this needs to be balanced against the principle of finality. He was convicted almost eight years ago. I recognize this is a strange procedural posture, but it's his burden. He had control over the evidence that he put in. And at this stage, if he hasn't put in evidence relating to a different claim that he's never made, I think that the conclusion is that he couldn't have advanced that claim successfully or submitted an affidavit that said something different without perjuring himself. All right. If there are no further questions, we ask the Court to affirm the district court. Thank you, Mr. Lito. Mr. Sparrow, you have a few minutes. Just a few points on rebuttal, Your Honors. We've talked a bit about the affidavit. I do want to highlight for the Court paragraph 13, which says, at no point in advance of trial and only minimally during trial did my attorney consult with me about the details of my case or discuss with me a theory of my defense. What side bears the burden of persuasion in a 2255 proceeding? The defendant. So if the evidence is unclear about something, which side loses? Mr. Eshimi. Okay. So I guess another way to think about it, one way to think about the hearing question that I thought of, I realize this isn't a civil case, but I'm trying to imagine, let's say that at this evidentiary hearing, your client takes the stand and reads this affidavit into the record and then rests, and the government moves for judgment as a matter of law. Do they win? Well, I would certainly hope Mr. Eshimi would do more than that. No, but assume that's all he did. Assume that all that happens at this hearing is he reads this affidavit verbatim into the record. Which side wins? I think Mr. Eshimi can still prevail here in that he never gave permission and that every other time— Nixon never gave permission either. But there is evidence in this record of consultation where Mr. Eshimi was active in contrast to Nixon who was completely unresponsive. But if I read this affidavit into the record, was there consultation? My answer is I have no idea because this affidavit says literally nothing about whether there was consultation about this issue. But we do know from the record that when there was consultation, there was disagreement between the objective of the defense. And that is not— This affidavit never says I disagreed with his statement. I was going to plead guilty. I was going to—I'm sorry. Well, that's right. But first of all, in the record, there's no evidence there was consultation about that at all. And then the affidavit, paragraph 13, just says at no point in advance of trial was he consulted about the theory of his case or the way the term is going to go about and only minimally during trial. So the affidavit does say more, and it does talk about the consultation Mr. Eshimi didn't receive. And then the record does show that every time he was consulted about this, they left on heated terms. They only met for a little bit of time. And they had multiple opportunities to do this when Mr. Eshimi had five different plea deals that each time he left and said, I want to pursue acquittal. I'm not taking this. And there were all kinds of variations from one count to two, before the indictment, after the indictment. And it shows a lot more work on the defendant's side than Nixon and a lot more like McCoy, where there was a bad relationship between the defendant and his counsel, where their objectives seemed different. And, you know, the rule that the government is suggesting would require Mr. Eshimi to get up in court and say, or get up right before closing arguments, where it wasn't in front of a jury but in front of the district court, and say, I don't know what's going on. This is crazy. But Mr. Eshimi had tried that at two different occasions at the arraignment hearing and the status conference when he tried to tell the district court his problems with his counsel and why he wanted some new counsel and in descriptions of how the meetings were going. And each time he was rebuffed by the district court. I think in fairness, and at least as I understood the government's argument, I'm not sure the government is requiring that. I think the government is saying, I shouldn't try to paraphrase anyone else's argument, but at least as I understood it, he should have put in the affidavit he didn't consult with me before he decided to confess my guilt to the jury. If you just put that in the affidavit, we'd have a different case. We'd have a different case. That's true if the affidavit was fuller. But the record shows that Mr. Eshimi had an objective for his defense to pursue acquittal throughout. How can I possibly prove that in a world where he tried to plead guilty at the end of the trial? Well, because the district court never asked. That's another problem here, and I think the questions of why did the district court grant an evidentiary hearing, because it did mention an evidentiary hearing. It did consider it in its order, and it said one wasn't necessary in its judgment. So that was considered in the district court's order. But even when Mr. Eshimi's counsel was trying to figure something out, get some acceptance of responsibility, the district court never asked Mr. Eshimi like you would normally do in something like that. And as I think was noted, it was a pretty brief exchange where the government said that was an option, and the district court said it wasn't an option. Mr. Eshimi couldn't have done that even if he had wanted to, which is certainly not what we're arguing anyways, that he could either plead guilty to all four counts on the indictment or pursue acquittal. And ultimately, that was what happened. He pursued acquittal, and yet his counsel still conceded guilt in closing statements, saying Mr. Eshimi had done it. Shame on him. And for these reasons, this court should reverse the district court and remand for an evidentiary hearing. Thank you. All right. I want to thank you, Mr. Sparrow, and I particularly want to thank Professor Rosenberg for making our day in court today by bringing your two students, Ms. Booth and Ms. Sparrow. The court relies heavily upon lawyers who are able to come and represent, sometimes on an appointed basis, but you have done a magnificent job with your students, so we commend you for that. And Mr. Lita, we thank you for your time here today. As usual, you represented the government quite ably. So the court will adjourn for the day. We'll come down and greet counsel.
judges: James Andrew Wynn, Pamela A. Harris, Toby J. Heytens